368 So.2d 708 (1979)
STATE of Louisiana, Appellee,
v.
Andrew C. PITTMAN, Appellant.
No. 63115.
Supreme Court of Louisiana.
March 5, 1979.
*709 F. Smith Knobloch, Knobloch & Knobloch, Thibodaux, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Francis Dugas, Dist. Atty., John J. Erny, Jr., Asst. Dist. Atty., for plaintiff-appellee.
BLANCHE, Justice.[*]
Defendant, Andrew Chrisman Pittman, was charged with theft of property valued in excess of $500. After trial by jury he was found guilty of attempted theft of property valued at $110,000 and was sentenced to serve one year in the Lafourche Parish Jail and pay all costs of the proceedings, with sentence to be reduced to six months in the Parish jail and suspension of the other six months on good behavior for one year if all costs were paid. Defendant appeals, relying upon eleven assignments of error.
Defendant was charged with theft of immovable property, consisting of a building and land. The property is located in Cut Off, Louisiana, and was owned by the Community Bank of Lafourche. The property had been used as a restaurant and lounge, and contained a large parking area.
Some time prior to the end of April, 1977, defendant inquired about purchasing the property and spoke several times with Gary Caballero, Senior Vice President of the Community Bank of Lafourche and Branch Manager at the Galliano Branch. On July 5, 1977, Pittman filed a bill of sale in the Conveyance Records of Lafourche Parish. This bill of sale, dated April 28, 1977, purportedly transferred the ownership of the property from the bank to Pittman for a consideration of $110,000 payable in ten annual installments, beginning June 1, 1978, together with interest at the rate of 12.65 percent per annum. There is no reference to any note or mortgage being executed in connection therewith, and the property description was set forth by reference to a copy of an act of dation en paiement by which the bank had acquired ownership of the property, which act was attached to the purported sale.
In the summer of 1977 the Community Bank of Lafourche leased the property to Lawrence Gros and Walter Roy Hancock under a lease-purchase agreement. The lessees began renovation of the property in order to prepare it for operation as a club. In late July or early August of 1977, while the renovations were going on, Pittman entered the property on one occasion and spoke with Hancock. Pittman said that he wanted to know what was going on, that he owned the building, that he had bought it and had a bill of sale on record. He did not try to stop the work or exercise any authority over the project. Subsequent to this, it appears that the officers of the bank became aware of the bill of sale which Pittman had filed in the public records. The District Attorney's office investigated and Pittman was arrested and charged by Bill of Information filed August 18, 1977. Following preliminary motions and hearings, Pittman was tried on the charge of theft, a violation of LSA-R.S. 14:67 and convicted by a jury on the responsive verdict of attempted theft, LSA-R.S. 14:27, Code of Criminal Procedure Article 814.
At the trial the State introduced evidence that the bank used this particular form of a bill of sale only when selling movables, not when selling immovables, and that copies of this form (apparently pre-signed in blank by the assistant cashier, Wayne Guidroz, and the witnesses) were kept by Caballero, who was the vice president and loan officer of the bank as well as a notary. The State introduced evidence that Caballero's signature was forged; the defense introduced evidence that the signature was not forged. Pittman admitted to filing the bill of sale in the Conveyance Office and claimed that a valid sale had taken place. Hancock testified that Pittman had spoken to him about owning the property. Clyde Caillouet, a member of the Board of Directors of Community *710 Bank of Lafourche, testified that he had no knowledge of any physical interruption of the possession by the bank. The trial judge noted that Caillouet's testimony showed that there was, in fact, no actual loss to the bank.
Although defendant makes eleven assignments of error, our consideration of the following two assignments of error will dispose of the case in defendant's favor.

ASSIGNMENTS OF ERROR NUMBERS 5 and 11
The defendant assigns as error:
5. THE TRIAL COURT ERRED in denying defendant's motion for a new trial on the grounds that no evidence was produced to show that the owner was deprived of anything of value.
11. THE TRIAL COURT ERRED in denying defendant's motion for a new trial on the grounds that no evidence was produced which showed the defendant acquired possession, or that he specifically intended to acquire possession of the property in question.
The elements of the crime of theft (LSA-R.S. 14:67) are (1) that there be a misappropriation or taking, (2) that the misappropriation or taking be of a thing of value, (3) that the thing belong to another, and (4) that the misappropriation or taking be with the intent to deprive the other permanently of that which is the subject of the taking.
Concerning attempted theft (LSAR.S. 14:27), a person who has the specific intent to commit a theft and who does or omits an act for the purpose of accomplishing the same is guilty of an attempt to commit the offense intended, and it is immaterial whether under the circumstances he would have actually accomplished his purpose.
A threshold question for our consideration is whether defendant's conduct was shown to be a misappropriation or taking.
Defendant recorded a bill of sale in the Conveyance Records. This bill of sale recited that the bank had sold the property to defendant and that defendant was indebted to the bank for the sum of $110,000. The defendant also told one person that he, and not the bank, was the owner of the property.
At the outset we observe the difficulty in stealing or attempting to steal immovable property, and admittedly, the defendant did not "haul off" either the land or any of the immovables located thereon. Additionally, he did not exercise any physical possession or control over the property, and the recordation of the act of sale did not amount to any taking (although it is conceivable that, given evidence of other acts [circumstances]), such action could have amounted to an overt act in a plan to steal money from a prospective purchaser on the basis of such a recorded title).
We conclude that none of these acts of the defendant, taken either separately or together, constitute a misappropriation or taking of the immovable property in question. Proof of this element is required to prove the offense of theft, and, in our opinion, neither of the above-referred to acts of the defendant divested the bank of its control over the property. Thus, we find that there was no evidence to prove the crime. State v. Douglas, 278 So.2d 485 (La.1973).
The elements of the crime of attempted theft include the specific intent to commit the crime of theft and an act tending directly toward the accomplishment of the theft. "Mere preparation to commit" the theft is not sufficient to constitute the crime. There was no act shown which tended directly toward the accomplishment of the theft with which defendant was charged. In the absence of such evidence, he could not be guilty of an attempted theft.
For the foregoing reasons, the conviction and sentence are annulled and set aside and the defendant is ordered discharged. State v. Thompson, 366 So.2d 1291 (La.1978); State v. Liggett, 363 So.2d 1184 (La.1978).
REVERSED.
NOTES
[*] Judge Cecil C. Cutrer, Louisiana Court of Appeal, Second Circuit, participated in this decision as an Associate Justice Ad Hoc.